# United Lighting Company, Appellant, *v.* Public Service Commission.

*Public service company law—Public Service Commission—Boroughs—Acquisition of electrical plants—Certificates of public convenience.*

Under article III, section 3 (d) of the public service company law, it is necessary for a borough to obtain a certificate of public convenience from the Public Service Commission evidencing its approval, before it can acquire a plant for rendering to the public of any service of a kind or character already being rendered by a public service company within a municipality.

In an application for such certificate it is not necessary that the borough must establish that it has sufficient borrowing capacity to finance the acquisition of the plant. The amount of the purchase price cannot be fixed in such proceeding, and the price may be determined in subsequent proceedings to compel the conveyance.

A borough has the right to attach to its municipal consent to occupy its streets a condition that it may subsequently acquire the electric light plant, and that the price thereof shall be fixed by appraisers chosen in a certain way. Such a method of ascertaining the price is procedural in character and incidental to the substantive right to purchase.

Argued May 5, 1924. Appeal, No. 25, April T., 1924, by United Lighting Company, from order of the Public Service Commission Application Docket, No. 5119, granting a certificate of public convenience evidencing the commission's approval of the acquisition, maintenance and operation of the electric lighting system of the United Lighting Company, a corporation operating in the Borough of Conneautville, Pennsylvania. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Application for a certificate of public convenience evidencing the approval by the Public Service Commission of the acquisition of the United Lighting Company.

The facts are stated in the opinion of the Superior Court.

The commission granted the certificate.   United Lighting Company appealed.

*Error assigned* was the order of the commission.

*Charles H. English,* and with him *Frank B. Quinn* and *John B. Brooks,* for appellant.—The applicant was not able to show compliance with existing laws in connection with the proposed acquisition of the respondent's property as required by section 3 of article III of the Public Service Company Law: Moore v. Luzerne County, 262 Pa. 216, 222; Western Savings Fund Society v. Phila., 31 Pa. 175.

The discretionary power vested by the act of assembly in the borough council, in fixing the price to be paid by the borough for the utility could not be delegated: Par. 1059, vol. III, Dillon on Municipal Corporations, 1672, fifth edition; Bradford City v. Foster, 5 Pa. Dist. Rep. 523; City of Jacksonville v. Ledwith, 9 Lawyers' Reports, Annotated, 76; Com. of Massachusetts v. Malatsky, 24 Lawyers' Reports, Annotated, 1173 (Old Series).

*Albert L. Thomas,* and with him *J. Perry Eckles,* Borough Solicitor, for Borough of Conneautville, intervening appellee.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY GAWTHROP, J., July 2, 1924:

This is an appeal by the United Lighting Company from an order of the Public Service Commission granting its certificate of public convenience, evidencing the commission's approval of the acquisition by the Bor-

ough of Conneautville of the electric lighting system of the United Lighting Company located in said borough.

The record shows that on the 12th day of February, 1912, the Borough of Conneautville passed an ordinance granting to one Frank C. Eckels, his heirs and assigns, the right to erect, maintain and operate an electric lighting system within its corporate limits upon the condition that the borough thereafter might acquire the plant upon the terms and in the manner provided in section 8 of the ordinance, which reads as follows:

"Section 8. That if, at any time, after five years from the date of installation of the electric light plant by the said Frank C. Eckels, his heirs and assigns, the Borough of Conneautville should desire to own, possess, and operate the said electric light system, the said Frank C. Eckels, his heirs and assigns, hereby agree to sell, transfer, and set over unto the said Borough of Conneautville, the said electric light plant or system at a valuation to be agreed upon by the parties in interest, and in the event of the said parties in interest being unable to agree upon a price therefor, each party shall choose a disinterested person as appraiser, and these two shall choose a third, if necessary, to value and appraise such plant or system, and the property owned in connection therewith, and both the said Frank C. Eckels, his heirs and assigns, and the said Borough of Conneautville, shall be bound to accept the said property at the valuation determined and placed thereon by the appraisers chosen in accordance with the foregoing provision." Eckels accepted the ordinance and thereupon assigned all of the rights granted to him thereby to the Eckels Heat, Light & Power Company, a corporation organized under the laws of the Commonwealth. This corporation erected in, upon and along the streets and alleys of the borough poles and wires for the transmission of electricity and installed a general electric lighting system for the purpose of supplying electric current to the inhabitants of the borough for light, heat and power. In October, 1915, the United

Lighting Company, appellant, a Pennsylvania corporation acquired the property rights, franchises and privileges of the Eckels Heat, Light & Power Company, and since that time has owned and operated the plant under said ordinance in supplying light, heat and power to the public in the Borough of Conneautville. The company does not manufacture or produce the electric current supplied to its customers. It is a distribution company and purchases its current from the Northwestern Electric Service Company, which company has signified its willingness to supply current to the Borough of Conneautville on the same terms and conditions upon which it now supplies it to the plaintiff. In June, 1921, the borough passed an ordinance signifying its intention to exercise its option to acquire and possess under and pursuant to Section 8 of the Ordinance of 1912, the electric light plant or system owned and operated in the borough by the plaintiff. Notice of the enactment of the ordinance and the intention and purpose of the borough to take over the plant was given to the plaintiff and to Eckels. Prior to the passage of the Ordinance of 1921, for the purpose of ascertaining whether at least three-fifths of the electors of the borough would assent to incurring an indebtedness in excess of seven per centum and not exceeding ten per centum of the assessed valuation of the taxable property therein for the purpose of purchasing the electric lighting system of the plaintiff, as authorized by the amendment to Article IX of the Constitution, and the Act of June 5, 1915, P. L. 846, the municipal authorities held a special public election, at which the electors of the borough, with only one dissenting vote, authorized and assented to such increase of indebtedness. It is undisputed that at the time the commission made the order complained of, the borrowing capacity of the borough was approximately $27,000. There was evidence before the commission sufficient to support a finding that the original cost of the plant, exclusive of a substation, was $12,216.07; that its present value was

only $8,231.74, and that its replacement value was $14,-373.74; that the original cost of the substation was $3,-703.32 and its present value and replacement value was $3,352.50. On the basis of this testimony, the cost of reproducing the plant new, including the substation and excluding a going concern value, would be $17,725.54, or an amount more than $9,000 less than the borrowing capacity of the borough at that time. Without finding the value of the plant, the commission determined that the acquisition of the lighting plant by the borough was within the borrowing capacity of the borough, and that its acquisition by the borough was necessary and proper for the service accommodation and convenience of the public served and to be served thereby, and made an order that a certificate of public convenience issue approving the acquisition of the plant by the borough.

The able counsel for the lighting company attack the order on three grounds. They contend: (1) That the borough was not able to show that the acquisition of the property is necessary and proper for the service, accommodation, convenience or safety of the public. (2) That the value of the property was in excess of the borrowing power of the borough. (3) That the borough was not able to show, as required by Art. III, Sec. 3, "compliance with existing laws" in connection with the proposed acquisition of the lighting plant.

1, 2. Art. III, Sec. 3 of the Public Service Company Law of 1913 (P. L. 1374, at 1388) provides that upon the "approval of the commission evidenced by its certificate of public convenience" first had and obtained, and upon compliance with existing laws and "not otherwise," it shall be lawful "(d) for any municipal corporation to acquire..... any plant.....for the rendering or furnishing to the public of any service of the kind or character already being rendered or furnished by any public service company within a municipality;" Art. V, Sec. 18, provides that "when application shall be made to the commission by any municipal corporation for the ap-

proval required by the provisions of Art. III, Sec. 3, (d) ......such approval......shall be given only if and when said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience or safety of the public." After a careful reading of the record, we are satisfied that it cannot be contended successfully that the findings of fact, that the acquisition of the lighting plant by the borough was within its borrowing. capacity, and that the acquisition of the plant was necessary and proper for the service, accommodation and convenience of the public, were not supported by evidence. On the contrary, we are constrained to state that in our opinion they are supported by the preponderance of the evidence. We do not decide, however, that it was necessary for the borough to establish in this proceeding that it had sufficient borrowing capacity to acquire the plant. The amount to be paid by the borough to the lighting company was not fixed, and could not be fixed in this proceeding. The application for the commission's approval in this case is not unlike the first mandamus proceeding brought to secure an estimate of the price which a municipality would be required to pay for water works which it contemplated acquiring under the Act of April 29, 1874 (P. L. 73, Clause 7, Sec. 34). It was held in Williamsport's Case, 232 Pa. 232, that if a borough shows that its borrowing capacity approximates the price which it probably may have to pay, a mandamus will issue requiring the water company to submit its books, papers, etc., to the borough for the purpose of estimating the price payable. The price which the lighting company must accept will have to be determined in the proceeding to compel the conveyance, if such a proceeding becomes necessary. (Waynesboro Water Co. v. Public Service Commission, 78 Pa. Superior Ct. 143.)

3. The major contention of the appellant is that the contract for the purchase of the lighting plant by the borough is not "in compliance with existing laws" be-

cause the price to be paid, as provided by the terms of the ordinance is to be fixed by appraisers, in the event that the parties are unable to agree upon a price.   It is urged that under the Act of May 20, 1891 (P. L. 90) and Sec. 43 of Art. XVII, Chap. 6, of the Borough Code of 1915 (P. L. 312), the only sources of the authority of a borough to purchase an electric light plant in operation within its borders, the authority is "to purchase......at such price as may be agreed upon by the borough, and a majority in value of the stockholders of such corporation;" that the borough may not substitute the judgment of a board of apraisers for that of the borough authorities; that this amounts to an unlawful delegation of discretionary powers; that as the borough is not bound to accept the property at the valuation determined and placed thereon by appraisers chosen under the terms of the ordinance, the company is not bound to sell at that valuation.

It must now be accepted as settled in this State (and it is generally recognized as the law) that when municipal consent to the use of streets is required, conditions may be attached to such consent.   If the corporation accepts the franchise grant and uses the streets, it is bound by the conditions attached to the grant.   (Norristown v. Reading Transit & Light Co., 277 Pa. 459; Swarthmore Borough v. Public Service Commission, 277 Pa. 472.) Our Supreme Court has frequently decided that even though a condition attached to the consent ordinance is ultra vires, the corporation is bound by the condition if it has accepted and acted on the grant.   (Allegheny City v. Gas & Pipeage Co., 172 Pa. 632).   But the Act of 1891, cited, gave this borough the authority to purchase the electric light plant operated therein.   It could in this consent ordinance impose as a condition of the grant the right to purchase the plant.   This is a common practice. (McQuillin on Municipal Corporations, Vol. IV, p. 3826.) The corporation is estopped to deny the authority of the municipality to make and enforce the stipulation.   (Dil-

lon on Municipal Corporations, 5th Ed., Vol. 3, Sec. 1312.) An agreement to sell at a price to be fixed by appraisers to be appointed by the parties is merely a subsidiary part of a much more extensive contract, a contract by virtue of which the public service corporation has in the past enjoyed privileges in the streets and highways of the municipality. The manner of determining the price is a matter of form rather than of substance; if it cannot be determined in the manner provided for in the contract by reason of the refusal of one party to do what he ought to do, the court will, if necessary to the purposes of justice, determine it upon the application of the other through a master or other competent form: Dillon on Municipal Corporations, Vol. 3, Sec. 1312, at p. 2194. See also Pom. Sp. Perf. Cont., p. 151; also, Page on Contracts, Sec. 94, where it is pointed out that the sound reason for specifically enforcing such a contract is that it is not practicable to restore the party who has performed, to his former position. Such a provision for fixing the purchase price was enforced against the City of Omaha in Omaha v. Omaha Water Co., 218 U. S. 180. An ordinance providing for the fixing of the purchase price by appraisers where a municipality attempted to exercise its option to purchase a water plant was sustained in a well considered opinion in Bristol v. Bristol & Warren Water Works, 19 R. I. 413; 34 Atlantic 359. Manifestly it is impracticable to fix, at the time of the passage of the consent ordinance, the price at which the municipality may take over the plant at a time more or less remote. If it is necessary that the parties agree upon the selling price at the time the municipality elects to exercise its option to purchase, the company by refusing to agree upon a price can prevent the sale. A stipulation that the price shall be fixed by appraisers, if the parties cannot agree, is virtually an agreement to sell at a fair price. There seems to be no sound reason for declaring such a provision illegal. We agree with the commission that the method of ascertain-

ing the price to be paid "is procedural in character and incidental to the substantive right of purchase." We think the borough had authority to provide for the fixing of the purchase price of the lighting plant in the manner prescribed by the ordinance. Nor is there any merit in the contention that if the borough has the right to buy the lighting plant, the purchase must include property of the company outside of the borough, but now connected with the appellant's plant. That question was settled adversely to the appellant in Greensburg Borough v. Westmoreland Water Co., 240 Pa. 481. The order is reasonable and in conformity with law.

The order of the commission is affirmed, and the appeal is dismissed at appellant's cost.