## Foley Brothers, Inc. *v.* Commonwealth, Appellant.

Argued January 13, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused August 3, 1960.

*Nelson M. Galloway*, Assistant Attorney General, with him *John R. Rezzolla, Jr.*, Chief Counsel, *David E. Abrahamsen*, Deputy Attorney General, and *Anne X. Alpern*, Attorney General, for Commonwealth, appellant.

*John B. Martin*, with him *John J. McCreesh, Jr.*, *Thomas S. Weary*, and *Duane, Morris & Heckscher*, for appellee.

Opinion by Mr. Justice Bok, June 30, 1960:

In 1947 the plaintiff, a contractor, made a contract with the Department of Highways of the Commonwealth to build the Penrose Avenue Bridge over the Schuylkill River in Philadelphia. The Commonwealth and the City of Philadelphia had, a year before, put in contract form their respective responsibilities vis-à-vis each other arising out of the construction of the bridge and its approaches. Plaintiff also contracted with the City in 1947 for certain of the peripheral work.

Plaintiff's construction contract required it to finish the bridge in 290 working days, but there were delays arising out of the Department's telling plaintiff to stop work while a railroad branch line was re-located and certain drainage problems were solved. Having begun work in March, 1948, plaintiff was unable to finish its job until November, 1950.

The Department of Highways did not issue its final certificate until 1953 and in 1954 plaintiff began suit before the Board of Arbitration of Claims, as provided in its contracts, against the Department and the City. There followed considerable sparring over jurisdictional and procedural matters, with the result, in 1957 and 1958, that this court decided that the Board of Arbitration had no jurisdiction over the City and that it did have jurisdiction over the Department.

Twenty-one hearings were held, in consequence, between June 25 and October 30, 1958, on three claims advanced by plaintiff. The Board unanimously allowed the first and third claims, without interest, and disallowed the second. The Commonwealth has appealed.

The case is now before us on narrow *certiorari*. The contract between the parties expressly provided for arbitration under the Act of May 20, 1937, P.L. 728, No. 193, §1, as amended, 72 PS §4651-1 et seq., which created the Board of Arbitration to hear claims against

the Commonwealth. It provides for a Board of three members appointed by the Governor: two of them shall constitute a quorum. They are appointed for staggered terms and receive compensation *per diem*. If any member shall die or resign, the Governor shall appoint a successor who shall serve the unexpired term.

In Section 8, 72 PS §4651-8, it is provided: "The action of the board dismissing said claim or making an award shall be final and no appeal shall lie therefrom." Under such provision expressly denying appeal, our review is by narrow *certiorari* only: *Kaufman Construction Co. v. Holcomb,* 357 Pa. 514 (1947), 55 A. 2d 534. We said in that case: "The distinction thus made has been reiterated and reinforced in a multitude of subsequent cases holding that where a statute expressly provides that there shall be no appeal the scope of appellate review is limited to the question of jurisdiction and the regularity of the proceedings; the merits of the controversy cannot be considered even though the interpretation given to the facts or the law by the governmental agency or the court below may have been erroneous."

The scope of jurisdiction and regularity of the proceedings is declared as follows in *Scott Township Appeal,* 388 Pa. 539 (1957), 130 A. 2d 695: "The First Class Township Code expressly provides that there shall be no appeal from a decree of a quarter sessions court changing the ward structure of a township. This Court will therefore consider the matter as on *certiorari* only, and will direct its inquiry to (1) the jurisdiction of the court below, (2) the regularity of the proceedings therein held, and (3) the scope of the powers possessed by the court."

To which need be added only questions of fraud and good faith on the part of the Board: *Land Holding Corp. v. Board of Finance and Revenue,* 388 Pa. 61

(1957), 130 A. 2d 700, which is not involved in the instant case.

The Commonwealth's vast brief argues points that have nothing to do with the narrow field to which our powers of review are limited, and this is so even if the Board made errors of law or fact. In general, these points present the following questions that have to do with the area of decision and that are not matter for review:

1. The Board's refusal to be bound by the parties' Agreement that all members should sit at every hearing.

2. The Board's decision that Appellant was bound by its several stipulations that did not involve the Board, and these stipulations could not be withdrawn.

3. The interpretation and effect of the stipulation on damages and whether it was binding on Appellant.

4. The Board's decision that the Commonwealth was liable for the damages for delay.

5. The Board's decision that the Commonwealth must pay the actual necessary cost of removal of the piles.

6. The Board's refusal of Appellant's motion to amend its answer.

7. The "failure of the Board to consider" the Wallace deposition, which was never offered into evidence.

The only point offered by the Commonwealth that is jurisdictional or has to do with the regularity of the proceeding is whether the Board could lawfully decide the case after the death of one of its members without a trial *de novo*.

The facts are that only member, Reilly, heard all of the testimony at all twenty-one sessions. Chairman Groover heard all but 71 pages out of 1234 that were taken; these had to do with the cross-examination of Young, plaintiff's Vice-President, out of 666 pages devoted to this witness. Member Henry sat at the first

eleven hearings and then died. The Governor appointed John P. McGrath in his place, and Mr. McGrath sat at the last six sessions and participated in the decision.

At the first session on June 25, counsel for both parties agreed that there should be no sessions at which fewer than all three arbitrators were present. At the session of September 10, all arbitrators being then present and having been present at all sessions thitherto, the Board rejected the stipulation about full membership. This was before member Henry died.

The applicable rule is that the parties may stipulate, and be bound by their act as the law of the case, in all matters affecting them without affecting the jurisdiction and prerogatives of the court. In *Muir v. Preferred Accident Ins. Co.*, 203 Pa. 338 (1902), 53 A. 158, we said: "The court, it is true, has inherent authority, except as against a mandatory statute, to control the proceedings as the equities of the case may require, and where the accommodation asked is of doubtful merit, or involves material consequences, the court will pretty certainly be applied to. But it is not necessary to subject parties or the court inexorably to such applications, and in all nonessentials it is safe to let parties or counsel fix their own conditions. It may, therefore, be stated as the settled law and practice in Pennsylvania, that whatever does not affect the jurisdiction, or the due order of business and convenience of the court is capable of arrangement between the parties or their counsel, and an agreement by them will become the law of the case."

In *Strickler v. Strickler*, 138 Pa. Superior Ct. 34 (1939), 10 A. 2d 69, the court said: "The order was for the sole benefit of the wife and her stipulation in respect to its amount, concurred in by the husband, should have been accepted by the Court, in the absence of fraud or overreaching, of which no evidence was produced.

"The order was not one which affected the dignity or prerogatives of the Court, but related to a matter which concerned only the parties themselves."

We are of clear opinion that the parties had no greater right to stipulate more than the legal number of arbitrators, which, under the Act, was two, than they would have to bind a three-judge Common Pleas Court by an agreement that all three judges preside at trial, or our court, that all seven justices sit instead of six or five. Hence the Board of Arbitration of Claims had the right to reject the stipulation.

This leaves us with only the Act of 1937 and its provision that a legal quorum should be two members. The Commonwealth seeks to attach to the Act of 1937 the Act of April 25, 1927, P.L. 381, No. 248, §4, 5 PS §164, *per* the provision that if after partial submission of a controversy one of the arbitrators dies or is incapacitated, the arbitration should be considered void and the parties, unless they shall have agreed otherwise, shall proceed *ab initio*. The Department did not so agree, after member Henry died, and hence claims the benefit of this provision.

The answer is clear. The Act of 1927 relates to private arbitration, while the Act of 1937 is a self-contained Act created expressly for the disposition of claims against the Commonwealth, which can be sued only when and how it permits. Private arbitrators are chosen *ad hoc* by the parties, whereas the Board arbitrators are Governor-appointed for set terms and are paid. The Act of 1927 has nothing whatever to do with the situation before us, the more so since the contract between the parties expressly adopted the arbitrational process of the Act of 1937.

Finally, the record shows a quorum of at least two arbitrators present at all sessions, and the signatures of all three to the decision of award. The Board's

power was "to hear and determine" after giving "consideration" to the evidence presented. We do not believe that this requires physical aural reception of every word spoken. In *Farran v. Curtis Publishing Co.*, 276 Pa. 553 (1923), 120 A. 544, where the opinion in a Workmen's Compensation case was written by a member of the Board who did not sit at the hearings, we said that such practice was not commendable but was not ground for reversal: see also *Solar Electric Co. v. Public Service Commission*, 88 Pa. Superior Ct. 495 (1926). It is obviously advisable, when the legislative command is to hear and determine, that those who decide should hear substantially all of the testimony, except where the delegation of the hearing power to a master or auditor is proper. But the important thing is that they who decide must consider all of the evidence, and in the event of a member of the hearing body dying, it should suffice that his successor consider, by reading from the record what he has not heard, in order to avoid the practical and expensive difficulty of requiring a full rehearing. Of equal import is the right of the parties to make argument before the determining body on the issues involved. In *Morgan v. U. S.*, 298 U.S. 468, 56 S. Ct. 906, 80 L. Ed. 1288 (1936), the Supreme Court said: "The one who decides must hear.

"This necessary rule does not preclude practicable administrative procedures in obtaining the aid of administrative assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them." See also

*NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 58 S. Ct. 904 (1938).

In *Davidson Unemployment Compensation Case,* 189 Pa. Superior Ct. 543 (1959), 151 A. 2d 870, the court said: "The various hearings before the referee initially, and on remand to take additional testimony as an agent of the board were certainly a compliance with the due process requirements relative to the presentation of evidence. The board may properly utilize its official staff facilities in affording the claimant the opportunity to present evidence. The board of course may conduct its own hearings, and the due process requirements do not prevent it from utilizing a hearing examiner for the conduct of such hearings. The question of the opportunity to be heard on the issues by way of argument presents a different problem. The board is the ultimate fact-finding tribunal, and, as we have seen, the opportunity to make argument on the issues before that body is required."

In any event, member Reilly heard all testimony and member Groover heard all but 71 pages, which is substantial compliance so far as aural reception alone is concerned. Since two members made a quorum under the Act, the failure of the new member, McGrath, to hear most of the testimony was not important.

Beyond this, however, the signatures of all three arbitrators is a guarantee, absent evidence to the contrary, that they gave full consideration to the case, and the record shows that all three were present to hear oral argument. As the Superior Court said in *Morgan v. Sanderson,* 146 Pa. Superior Ct. 37 (1941), 21 A. 2d 475: "Although we thus dispose of the point, to avoid misunderstanding, we hasten to add that in our opinion a statement by either a referee or the board that it has read all the testimony is not necessary. Like judges of courts of law, they are presumed to perform the innumerable duties of their office without a need-

lessly repetitious statement to that effect in every opinion filed. When a court of law, for example, acts upon a motion for judgment n.o.v., its action would not be reviewable on the ground that it failed to state it had resolved all the evidence and inferences in favor of the party who got the verdict. Similarly, its action would not be reviewable on the ground it failed to state that in reaching its opinion it was free from bias or prejudice; that it had no interest in the case which would disqualify it in rendering impartial judgment; that it had read the record and the briefs of counsel; that it had listened carefully to the oral argument. These and similar matters, implicit in the judicial function conscientiously performed, are presumed."

This is particularly so since we consider the Board as a judicial tribunal: *Kaufman Construction Co. v. Holcomb,* supra, (357 Pa. 514) ; *Merchants' Warehouse Co. v. Gelder,* 349 Pa. 1 (1944), 36 A. 2d 444; *Philadelphia Housing Authority v. Turner Construction Co.,* 343 Pa. 512 (1942), 23 A. 2d 426.

The decision and award of the Board of Arbitration of Claims is affirmed, costs to be paid by the appellant.

Mr. Justice COHEN dissents.