Lyall *v.* Lyall, Appellant.

Argued June 16, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Herbert Karasin,* for appellant.

No appearance entered nor brief submitted for appellee.

OPINION BY SPAETH, J., March 29, 1976:

This is an appeal from the refusal of the court below to approve an agreement for a permanent allowance, stipulated to by both parties to a divorce action. Since the court should have approved the agreement, we remand with instructions to enter an order granting an allowance in accordance with the agreement.

On October 27, 1972, appellee George Lyall instituted an action in divorce a.v.m. on the ground of indignities against appellant Mary Lyall. On March 2, 1973, appellant's attorney filed a petition for appointment of a guardian ad litem for appellant because of her recent psychiatric hospitalizations and her inability to communicate with her attorney and participate in her own defense. Following a court-ordered neuropsychiatric examination, a guardian was appointed.

Two master's hearings were held in July, 1974. At the second, the parties entered into the record a stipulated agreement providing for a permanent allowance for appellant regardless of the outcome of the proceedings. The master subsequently filed a report recommending that a divorce be granted. On September

26, 1974, the court entered a final decree in divorce, but it did not enter an order for permanent allowance.

On October 22, 1974, appellant's attorney petitioned the court for an order providing permanent alimony under Section 45 of the Divorce Law, Act of May 2, 1929, P.L. 1237, §45, 23 P.S. §45. Attached to the petition was a proposed order incorporating the terms of the stipulation. The court did not issue the stipulated order but entered a rule upon appellee to show cause why he should not be ordered to pay permanent alimony. The rule was made returnable on November 15, 1974, but in the interim appellant filed this appeal.[1]

In its opinion, the lower court points out that appellant does not qualify for alimony under Section 45 of the Divorce Law since that section permits the award only when the spouse is insane. Both appellant in her petition and the lower court, however, overlooked Section 48 of the Divorce Law.[2] Section 48 provides:

"In case of the application of a spouse for divorce from a spouse who is insane or *suffering from serious mental disorder*, the court, or a judge thereof to whom the application is made, shall have the power before granting the divorce to decree an allowance for the support of the defendant spouse in such amount as it may direct. The allowance herein provided may be subsequently adjusted to conform to changed conditions." (Emphasis supplied). Act of May 2, 1929, P.L. 1237, §48, added Sept. 22, 1972, P.L. 880, No. 202, §2, 23 P.S. §48.

Thus, for an allowance for support to be granted, a defendant spouse's psychiatric difficulties need no longer rise to the level of legal insanity; a serious mental disorder will suffice.

---

1. An appeal may properly be taken as soon as the divorce decree is entered since the decree terminates all property rights and duties of either party. Section 55 of the Divorce Law, *supra*, 23 P.S. §55.

2. Appellant's brief in this court discusses Section 48.

Here the record clearly shows that appellant was suffering from a serious mental disorder at the time of the proceedings. A guardian ad litem was needed to properly prepare appellant's defense. The court neuropsychiatrist found appellant to be "seriously ill" and diagnosed her as paranoid schizophrenic. The first master's hearing was terminated abruptly due to appellant's uncontrolled outbursts. Appellee's testimony at the second hearing established that appellant had been institutionalized several times for emotional problems. Appellant's testimony at that hearing was often bizarre and incoherent.[3]

Testimony at that hearing also established appellant's need for a support allowance. She testified that she was not then employed, nor had she been for several years. Her behavior at the hearing also indicated that she would probably have difficulty finding and holding employment.

This is precisely the kind of difficult situation that Section 48 was designed to alleviate. Since, therefore, the court had the power to order an allowance for support, it should have done so in accordance with the parties' stipulation. Where parties to a divorce stipulate as to the amount of alimony to be paid, the court should accept the stipulation in the absence of fraud or overreaching by either party and enter an order accordingly. *Strickler v. Strickler*, 138 Pa. Superior Ct. 34, 10 A.2d 69 (1939); *Hall v. Hall*, 97 Pa. Superior Ct. 429 (1929); Freedman & Freedman, *Law of Marriage and Divorce in Pennsylvania* §482 (2d ed. 1957). *Cf.*, *Foley Bros., Inc. v.*

---

3. The issue of whether the divorce was properly granted under these circumstances, although raised in appellant's brief, is not before us since no exceptions were filed to the master's report and the issue was not presented to the lower court. *Wiggins v. Wiggins*, 171 Pa. Superior Ct. 298, 90 A.2d 275 (1952); *Epstein v. Epstein*, 93 Pa. Superior Ct. 398 (1928). *Cf.*, *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

*Commonwealth,* 400 Pa. 584, 163 A.2d 80 (1960). Such an order does not affect "the dignity or prerogatives of the Court, but relate[s] to a matter which concern[s] only the parties themselves." *Strickler v. Strickler, supra* at 36, 10 A.2d at 69, quoted in *Foley Bros., Inc. v. Commonwealth, supra* at 590, 163 A.2d at 84.

Here there is no evidence of fraud or overreaching. To the contrary, appellant's guardian ad litem stipulated on the record that the agreement was acceptable. Moreover, the agreement itself seems fair and comprehensive. It provides for, *inter alia,* a fifty dollar a week allowance for appellant, a life estate for her in the marital home, payment for major repairs to the property, life and health insurance policies for her benefit, a limited amount charge account at Gimbel's Department Store, and, upon a showing of insurability of appellant, a monthly ten dollar bank deposit in the name of the guardian towards the purchase of an automobile. It would continue during the lifetime of the parties[4] or until appellant's remarriage.

For these reasons, the case is remanded to the court below with instructions to enter an order for an allowance to appellant in accordance with the agreement stipulated to by the parties.

HOFFMAN, J., did not participate in the consideration or decision of this case.

CONCURRING OPINION BY PRICE, J.:

I agree with Judge SPAETH that the issue of whether this divorce, based on the record before us, was properly granted is waived. This is so for although appellant raises the question in her brief on this appeal there were no exceptions filed in the lower court, and the issue was

---

4. If appellee predeceases appellant, only the promise to pay the premium on the life insurance policy would act as a claim against appellee's estate, but appellant's life estate in the home would continue until her death.

not presented to the lower court. Based on our traditional standards of review in such cases and were the issue before us properly, I feel it necessary to note that the record is grossly inadequate to establish that the conduct of appellant which was alleged to have constituted indignities was independent of any mental disease. This is particularly so since appellee has the burden of proof by clear and convincing evidence that the mental illness occurred after the course of conduct relied upon. Otherwise, mental illness should be a complete defense to a suit for divorce for conduct occurring during the existence of the mental disorder, and a divorce should be denied where, as in this record, it is far from clear whether or not the course of conduct was related to appellant's mental condition. There can be no argument that appellant is mentally ill and has been for some time. Her conduct for an indeterminate time amply demonstrates this conclusion, including, but not limited to, the episodes I will designate by their locale as the Harrisburg, New Jersey and Florida episodes. The Master dismisses this whole matter in a single sentence:

"The Master does not feel that the defendant's words and actions were the result of her mental illness, but rather that the illness happened after most of the events as related by the plaintiff."

I can only assume that the Guardian ad litem and the appellant's attorney, relying upon their satisfaction with the stipulation and agreement for a permanent allowance, accepted the situation as being in the best interest of the appellant. I am not satisfied that this is so. The doctrine of waiver as recently developed, however, admits to no exception applicable to this appeal, although I reach this conclusion reluctantly.

Since I too agree that the court should have approved the agreement, as discussed by Judge SPAETH, I join his opinion and would remand with instructions to enter an appropriate order in accordance with the agreement of the parties.

CONCURRING AND DISSENTING OPINION BY VAN DER VOORT, J.:

While I concur in the Opinion of the majority remanding the case, and agree that the instant factual situation calls for application of 23 P.S. §48, I dissent to the within disposition. Since 23 P.S. §48 was not considered below, I would not rely upon the stipulation as grounds for a current support order. Rather, I would vacate the decree in divorce upon the condition that appellant file an application under 23 P.S. §48 for permanent support, and engage in a hearing. The purpose of this hearing would be to allow the lower court to determine whether or not an allowance for appellant's support shall be decreed and then whether or not a decree in divorce shall be re-issued and if re-issued, it should stand affirmed. In the event that such application for alimony be not made within thirty days, the order granting the decree in divorce would be reinstated and affirmed.

CERCONE, J., joins in this concurring and dissenting opinion.